IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-CR-161 |
| | ) | |
| GONZALO GARCIA GINES, | ) | (REEVES / GUYTON) |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on the Petition of Eugenia Alvarez to Adjudicate Validity of Interest in Property [Doc. 518], which was filed on October 29, 2014. District Judge Pamela L. Reeves referred [Doc. 520] this petition to the undersigned on November 3, 2014, for disposition or report and recommendation regarding disposition by the District Judge as may be appropriate. See 28 U.S.C. § 636(b). The parties came before the Court on January 9, 2015, for an evidentiary hearing on the petition. Assistant United States Attorney Anne-Marie Svolto appeared on behalf of the Government. Attorney Rachel Bonano represented the Petitioner Eugenia Alvarez, who was present and participated with the aid of an interpreter. The purpose of the evidentiary hearing was to determine whether the Petitioner has a third-party interest in a 2006 Nissan Frontier, which her ex-husband has forfeited to the Government.

For the reasons discussed below, the Court finds that the Petitioner has an ownership interest in the 2006 Nissan Frontier. The Court also finds that the Petitioner's interest in the Frontier is superior to that of the Government. Accordingly, the Court **RECOMMENDS** that the Petition be granted and that the Frontier be returned to the Petitioner.

## I. BACKGROUND AND POSITIONS OF THE PARTIES

Defendant Gonzalo Garcia Gines entered a change of plea before District Judge Pamela L. Reeves on August 21, 2014. On August 25, 2014, Judge Reeves entered an Agreed Preliminary Order of Forfeiture [Doc. 417], in which the Court found the Defendant had forfeited the following property to the United States: (1) A money judgment of $1,500,000 and (2) a 2006 Nissan Frontier, Vehicle Identification Number 1N6AD07U56C418625. The Court directed the United States Marshals Service to maintain custody of the property. The Order states that the United States hereby gives notice of its intent to dispose of the forfeited property and directs that

> Any person other than the defendant, having or claiming a legal interest in any of the above-listed forfeited property must file a petition with the Court within sixty (60) days from the first day of publication of this Notice on the official United States Government internet website, which is www.forfeiture.gov.

[Doc. 417, p.3]

On October 29, 2014, Petitioner Alvarez, ex-wife of Defendant Gines, filed the Petition of Eugenia Alvarez to Adjudicate Validity of Interest in Property [Doc 518].[1] The Petition requests a hearing on the validity of Ms. Alvarez's interest in the 2006 Nissan Frontier.[2]

---

[1] Despite the filing of the Petition twelve days beyond the deadline, the Court has exercised [Doc. 567] its discretion to address the substantive issue raised by the Petitioner, finding that the Government is not prejudiced by permitting Ms. Alvarez to proceed with the Petition.

[2] The Petition also asserts that Petitioner Alvarez has an interest in a portion of the money judgment against the Defendant. At a hearing on November 20, 2014, the Petitioner argued that, as a part of her divorce settlement, the Fourth Circuit Court for Knox County ordered that Defendant Gines pay the Petitioner $60,000 and awarded $6,000 to compensate the Petitioner for her attorney's fees. The Petitioner argues that she is entitled to $66,000 from the money judgment forfeited by Defendant Gines to the United States. The undersigned has determined [Doc. 567] that Petitioner Alvarez may not assert an interest in the money judgment against the Defendant, see Fed. R. Crim. P. 32.2(c)(1), and dismissed her claim for $66,000. Accordingly, the instant Report and Recommendation deals only with the Petitioner's interest in the 2006 Nissan Frontier.

The Petition states that Ms. Alvarez was married to Defendant Gines in Mexico in September 2006. It states that Ms. Alvarez purchased the 2006 Nissan for $12,500 from a private owner in Chattanooga, Tennessee, in 2008, and that the title is in her name. The Petition relates that Ms. Alvarez filed for divorce from Defendant Gines on December 31, 2013, shortly after he was arrested for the instant offense. It states that Ms. Alvarez was reasonably without cause to believe that the Defendant was using her vehicle for drug trafficking. Accordingly, Petitioner Alvarez asks that the Court return the Frontier to her.

The Government argues that its interest in the Frontier is superior to that of the Petitioner. Defendant Gines forfeited his interest in the Frontier to the Government in his plea agreement [Doc. 326], which was filed on July 17, 2014. The Government maintains that its interest relates back to the time that the drug conspiracy began in August 2012. Before that time, the title to the Frontier was in Defendant Gines' name and, thus, legally belonged to him. The Government contends that although Petitioner Alvarez obtained a title in her name in November 2014, her interest does not supersede that of the Government. Thus, it contends that the Petition must be denied.

## II. SUMMARY OF TESTIMONY AND EVIDENCE

At the evidentiary hearing, the Petitioner Eugenia Alvarez Robles testified that she married Gonzalo Garcia Gines[3] in Mexico in 2006. She stated that toward the end of 2008, she traveled with Gines to Chattanooga to purchase a 2006 Nissan Frontier. She testified that she purchased the Frontier with her money that she earned from working. The Petitioner testified that the title to the Frontier was put in Gines' name because she did not have the

---

[3] The divorce decree [Exh. 1] names Gonzalo Garcia Mata, a/k/a Eduardo Garcia Mata as the Respondent. Petitioner testified that Gonzalo Garcia Mata is the same person as Defendant Gonzalo Garcia Gines. She stated that Gines also goes by the nickname Puebla.

necessary documents to obtain a title in her name at the time. She said that Gines gave her the title to the Frontier because it was her car. According to the Petitioner, Gines "signed the title over" to her "right after we bought it." She said she believed he signed the title over to her in 2009 or 2010.

The Petitioner stated that initially, she was the primary user of the Frontier. Later, Gines bought a black Cougar, and she drove that car and "passed" the Frontier to Gines for him to use. During this time period, she and Gines shared the Frontier. In 2012, Gines sold the Cougar, and the couple only had the Frontier.

The Petitioner testified that she knew nothing of Gines' involvement in the drug conspiracy until he was arrested at their home. She stated that she believed Gines was at work at a restaurant during the time he is alleged to have been involved in the drug conspiracy. She stated that she never saw drugs, drug paraphernalia, or anything in the Frontier that would cause her to suspect that Gines was using it for drug trafficking. The Petitioner stated that she filed for divorce shortly after Gines was arrested. She divorced Gines on November 13, 2014. She was awarded the Frontier in the divorce decree. Petitioner Alvarez produced a Tennessee Certificate of Title [Exh. 2] for the Frontier, which was issued November 5, 2014. The title contains no information on the previous owner and states that the vehicle was acquired on August 30, 2010.

On cross-examination, the Petitioner stated that she acquired the title for the Frontier from Gines after they purchased it. She said that at the time the Frontier was purchased, she did not have a bank account or bills in her name, which were necessary to put the title in her name. She stated that before she obtained the 2014 title in her name, the Frontier was in Gines' name. The Petitioner also said that Gines "signed the title to me almost as soon as we got it." She agreed that in 2013, she registered a 2006 Nissan Pathfinder in her name.

4

On redirect examination, the Petitioner testified that she drove the Frontier most of the time and that Gines only drove it from time to time.

### III. FINDINGS OF FACT

Based upon the testimony of the Petitioner and the exhibits entered at the evidentiary hearing, along with the factual statement in Defendant Gines plea agreement, the Court makes the following findings of fact:

(1) The Petitioner and Defendant Gines were married in Mexico in 2006.

(2) The Petitioner and Gines traveled to Chattanooga, Tennessee, in late 2008, to purchase a 2006 Nissan Frontier. The couple purchased the Frontier with money earned by the Petitioner. The couple agreed to put Gines' name on the title because the Petitioner did not have the necessary documents to obtain a title in her name at that time.

(3) Initially, the Petitioner was the primary driver of the Frontier. Sometime before 2012, Gines bought a black Cougar, and the Petitioner drove the Cougar, while Gines drove the Frontier. Gines sold the Cougar in 2012, after which the Petitioner again became the primary driver of the Frontier. However, Gines continued to use the Frontier on occasion up until his arrest in December 2013.

(4) Sometime in 2009 or 2010, Gines "signed over" the title to the Frontier to the Petitioner, but the Petitioner did not obtain a certificate of title in her name until November 5, 2014. At all times following the purchase of the Frontier in 2008 and before the Petitioner obtained a title in her name on November 5, 2014, the title to the Frontier was in Gines' name.

(5) From August 1, 2012,[4] to December 2, 2013, Gines conspired with others to distribute cocaine and crack cocaine.

(6) At the time of Gines' arrest on December 10, 2013, the Government seized the Frontier and placed it in the custody of the United States Marshal's Service.

(7) On July 17, 2014, Gines entered into a plea agreement [Doc. 326] with the Government. In his plea agreement, Gines agrees to forfeit all assets or property used to commit the conspiracy to distribute controlled substances. Gines expressly agrees to forfeit his interest in the Frontier seized at the time of his arrest on December 10, 2013.

(8) On August 25, 2014, District Judge Reeves entered an Agreed Preliminary Order of Forfeiture [Doc. 417], ordering that the Frontier is forfeited to the Government and setting forth the procedure for adjudicating any third party interest in the vehicle.

(9) On November 5, 2014, the Petitioner obtained a Certificate of Title for the Frontier in her name.

(10) The Petitioner was divorced from Gines on November 13, 2014. The divorce degree awards all of Gines' interest in the Frontier to the Petitioner.

## IV. ANALYSIS

In order to show that the forfeiture of the Frontier is invalid, the Petitioner must establish by a preponderance of the evidence (1) that she "has a legal right, title, or interest in the property" and that "the right, title, or interest was vested in [her] rather than [Gines] or was

---

[4]The plea agreement relates the drug trafficking activity of Gines beginning in June 2013. Nevertheless, Gines agreed to be held responsible for distributing cocaine over the course of the drug conspiracy charged in the Indictment. Thus, the Court will use August 1, 2012 as the beginning date for Gines' drug trafficking.

superior to any right, title, or interest of [Gines] at the time of the commission of the acts which gave rise to the forfeiture of the property[.]" 21 U.S.C. § 853(n)(6)(A). The Government argues that the Petitioner has failed to carry this burden because at the time the conspiracy began in August 2012, legal title to the Frontier was in Defendant Gines name alone. The Petitioner contends that her testimony that Gines signed the title to the Frontier over to her at some point in 2009 or 2010 shows that her interest in the Frontier was superior to that of Gines in August 2012.

Pursuant to the criminal forfeiture statute, "all right, title, and interest in property subject to forfeiture 'vests in the United States upon the commission of the act giving rise to forfeiture under this section.'" United States v. Huntington Nat'l Bank, 682 F.3d 429, 433 (6th Cir. 2012) (quoting 21 U.S.C. § 853(c)). "'After the commission of the criminal acts, title to the forfeitable property, by operation of the relation-back clause, actually belongs to the government.'" United States v. Harris, 246 F.3d 566, 575 (6th Cir. 2001) (quoting United States v. Lavin, 942 F.2d 177, 186 (3d Cir. 1991)); Huntington Nat'l Bank, 682 F.3d at 433. However, the government's interest in the property under the relation-back doctrine is limited to that of the defendant at the time he or she committed the criminal acts. Id. In order to protect the rights of innocent third parties, the criminal forfeiture statute "carve[s] out two exceptions to this relation-back clause in 21 U.S.C. § 853(n)." Id. The first exception applies when the third party, not the defendant, has the interest in the property or has a superior interest to that of the defendant at the time of the crime. Id.; 21 U.S.C. § 853(n)(6)(A). The second exception is for bona fide purchasers without reasonable cause to believe the property was subject to forfeiture. 21 U.S.C. § 853(n)(6)(B). Petitioner Alvarez claims to fall within the first of these exceptions, arguing that she, rather than Gines, was the owner of the Frontier.

7

Case 3:13-cr-00161-PLR-HBG   Document 688   Filed 02/03/15   Page 7 of 13   PageID #: 3216

The Court first examines whether Petitioner Alvarez has a legal right, title or interest in the Frontier. At the evidentiary hearing, the Petitioner presented both her divorce decree [Exh. 1], which states that she bought and paid for the Frontier and that all of her ex-husband's interest in the Frontier is divested from him and vested in her, and a certificate of title to the Frontier [Exh. 2] listing her as the owner. Accordingly, the Court finds that the Petitioner has a legal interest in the Frontier.

The Government argues that its interest in the Frontier (which relates back to the beginning of the conspiracy) precedes and is superior to the Petitioner's interest. It points out that the certificate of title was issued on November 5, 2014, and the divorce decree was entered on November 13, 2014. Gines pled guilty to participation in a conspiracy to distribute cocaine and crack cocaine from August 1, 2012, to December 2, 2013. In his guilty plea, Gines [Doc. 326] agreed to forfeit his interest in the Frontier to the Government.[5] The Government argues that the Court should look to how the Petitioner and Gines formalized their intentions in determining who was the owner of the Frontier.[6] Neither party contests the fact that following

---

[5] Although the plea agreement implies [Doc. 326, pp.7-8] and the Preliminary Order of Forfeiture [Doc. 417] finds that Gines used the Frontier in committing the crimes to which he pled, the Frontier is not mentioned in the plea agreement's factual basis. At the evidentiary hearing, the Petitioner testified that she never saw any evidence of drug trafficking or money laundering in the Frontier. The undersigned does not doubt the credibility of this testimony or of the Petitioner's assertions that she knew nothing of her ex-husband's "dirty business." Nevertheless, a third party has no right to challenge the Preliminary Order's finding of forfeitability. SKL Investments, Inc. v. United States, No. 13–mc–38, 2014 WL 4365297, *3-4 (W.D. Tenn. Sept. 2, 2014) (observing that every circuit to address the issue has so held). Accordingly, for the purpose of this report, the Court assumes that the Frontier is subject to forfeiture because it was used in the commission of the crimes to which Gines has pled.

[6] The Government contends that the Petitioner had no equitable interest in the Frontier as marital property because such an interest does not arise under Tennessee law until the couple files for divorce. The Court finds, however, that the Petitioner is not arguing that she and Gines both had an interest in the Frontier because they owned it jointly as a married couple. Instead, the Petitioner argues that the Frontier belonged to her and that she and Gines both understood and intended that the Frontier belonged to her from the time of its purchase in 2008.

the purchase of the Frontier in 2008 and continuing to November 2014, the Certificate of Title was in Gines' name. The Government contends that because its interest in the Frontier relates back to Gines' interest at the start of the conspiracy in August 2012, its interest in the Frontier is superior to that of the Petitioner, who can only assert an interest or show title to the Frontier in late 2014.

The Court finds that although the Certificate of Title was in Gines' name in August 2012, this fact is not controlling as to ownership of a vehicle in Tennessee. The Court agrees with the Government that it must look to state law to determine the nature of the Petitioner's property interest in the Frontier. See United States v. Certain Real Property Located at 2525 Leroy Lane, 910 F.2d 343, 349 (6th Cir. 1990) (holding that "it is appropriate to refer to state law in determining the nature of the property interest claimed by a third party in forfeiture proceedings"), cert. denied Marks v. United States, 499 U.S. 947 (1991); see also United States v. O'Brien, No. 97-4382, 1999 WL 357755, *2 (6th Cir. May 11, 1999) (denying attorney's interest in vehicle, which defendant had orally pledged as payment, because under Ohio law, only the title holder has an interest in a vehicle). In Tennessee, "the intention of the parties, not the certificate of title, determines the ownership of an automobile." Smith v. Smith, 650 S.W.2d 54, 56 (Tenn. Ct. App. 1983); Mercado v. Travelers Ins. Co., 443 S.W.2d 819, 823 (Tenn. Ct. App. 1969). Moreover, "[c]ompliance with the formal requirements of the Tennessee Motor Vehicle Title and Registration Law is not a prerequisite to transfer of ownership." Id.

With regard to the Petitioner's and Gines' intentions as to the ownership of the Frontier, the Petitioner testified that they bought the Frontier with money that she had earned. She testified that from the time of its purchase the Frontier was to be her car. This testimony is supported by the divorce decree, in which Knox County Circuit Judge Greg McMillan found that

9

Case 3:13-cr-00161-PLR-HBG   Document 688   Filed 02/03/15   Page 9 of 13   PageID #: 3218

the Petitioner "bought and paid for the 2006 Nissan Frontier Pick-Up[.]" [Exh.1, p.3] The Petitioner testified that the Frontier was titled in Gines' name because she did not have the necessary documents to get a certificate of title in her name. Most importantly, the Petitioner testified that Gines signed the title over to her sometime in 2009 or 2010.[7] This testimony reflects Gines' intention that the Petitioner was the owner of the Frontier. The Court finds this testimony by the Petitioner to be credible and unchallenged.[8]

The Government argues that the Petitioner's testimony contradicts her assertion that she and Gines intended for her to be the owner of the Frontier because the Petitioner testified that Gines used the Frontier and that, at various times, she drove different vehicles. However, the Court finds that the Petitioner testified that she was the primary driver of the Frontier after it was purchased in 2008 and again in 2012, after Gines sold the Cougar. Accordingly, the Court

---

[7] The Court notes that the Certificate of Title introduced at the evidentiary hearing states that the Petitioner acquired the Frontier on August 30, 2010.

[8] In the plea agreement, Gines agrees to forfeit his interest in the Frontier to the Government but does not specify the nature of his interest in the Frontier. The plea agreement states that the Frontier was seized on December 10, 2013, from the residence shared by Gines and the Petitioner. The plea agreement also states that Gines agrees not to object to any forfeiture proceedings and "to take all steps to locate [the listed] property and to pass title to the United States[.]" To the extent that the plea agreement could be interpreted as Gines' assertion that he owns the Frontier, the Court observes that Gines had an incentive to forfeit the Frontier and no incentive to assert the rights of the Petitioner, who had already filed for divorce at the time he entered into the plea agreement. In this regard, the Court also notes that the divorce decree further affirms Gines' willingness to betray the Petitioner's interests:

> In making a fair and equitable settlement of the marital estate, the [Knox County Circuit Court Judge] specifically finds that Wife through the course of their almost eight-year marriage gave at least $60,000 to the Husband from her paychecks in the course of their marriage, believing that it was being saved for their future; however, it was being used to pay for the living expenses of the Husband's mistress of four years as well as paying for the expenses of the mistress's children and to pay rent for her apartment.

[Exh. 1, pp.1-2]

finds that the Petitioner was the primary driver of the Frontier during the time frame of the conspiracy. The fact that the Petitioner permitted Gines to use the Frontier occasionally does not detract from her ownership interest in the vehicle. Moreover, the Petitioner testified that she has not had a vehicle after the Government seized the Frontier in December 2013.

At the evidentiary hearing, the Government argued that the Court should give little weight to the Petitioner's testimony that the Frontier belonged to her, rather than Gines, because she did not obtain a certificate of title to the Frontier in her name before 2014. AUSA Svolto argued that the Petitioner obtained a title for another vehicle in 2013. Thus, the Government suggests that the Petitioner did not obtain a title to the Frontier in her name, despite having the ability to do so. The Petitioner testified that she believes that she obtained a title to a 2006 Nissan Pathfinder in 2013. This was the only reference to the Pathfinder, and the Court has no information about the circumstances surrounding the purchase of the Pathfinder, who drove the Pathfinder, or what happened to it. Nevertheless, the Court finds that the Petitioner's failure to get an official certificate of title to the Frontier in her name before 2014 does not negate the Petitioner's and Gines' intention that the Frontier belonged to the Petitioner. Within about a year and a half of the purchase of the Frontier, Gines signed the title over to the Petitioner. The Court infers that the Petitioner believed that she had perfected her ownership of the Frontier at this time without obtaining a certificate of title in her name.

In a similar argument, the Government contends that if Gines and the Petitioner intended for the Frontier to belong to the Petititioner alone, they should have titled the Frontier in her name alone. In support of this argument, the Government observes that, in Tennessee, when only one spouse's name appears on the certificate of title, only that spouse may transfer the title. See Tenn. Opin. Atty Gen'l, No. 00-155, 2000 WL 1616840 (Tenn. A.G. Oct. 13, 2000).

11

However, the Court has already found that in Tennessee, the certificate of title is not the only indication of the parties' intentions with regard to ownership of a vehicle. See Smith, 650 S.W.2d at 56. In this case, the Petitioner believed that she could not get a certificate of title in her name at the time she purchased the Frontier because she lacked the necessary documents. Aside from Gines' registering the Frontier in his name, the Petitioner's and Gines' actions—purchasing the Frontier with the Petitioner's money, the Petitioner being the primary driver, and Gines' signing the title over to the Petitioner— showed their intention that the Petitioner was the owner of the Frontier. Accordingly, the Court finds that the Petitioner, rather than Gines, was the owner of the Frontier on August 1, 2012.

V. CONCLUSION

For the reasons stated above, the Court finds that the Petitioner has shown by a preponderance of the evidence that she has a legal interest in the 2006 Nissan Frontier and that her interest in the Frontier supersedes that of the Government. Accordingly, the Court **RECOMMENDS** that the Petition be granted and that the Frontier be returned to the Petitioner.[9]

---

[9]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

The Court also recommends that the storage fees for the Frontier from December 2013 to the present be assessed to the Government, rather than to the Petitioner.[10]

                                          Respectfully submitted:

*Bruce Guyton*
United States Magistrate Judge

---

[10] At the November 20 hearing, AUSA Svolto stated that storage of the Frontier was costing $30 to $40 per month. Following the Government's seizure of her Frontier, the Petitioner has been without a vehicle for some fourteen months and has had to retain counsel in order to secure its return. Requiring the Petitioner to bear the additional expense of the storage fees would be antithetical to justice.